In re Estate of Hershey: Hershey, Exrx., Appellant, v.
Bowers, Tax Commr., Appellee.

[Cite as Hershey v. Bowers, Tax Commr., 1 Ohio App. 2d 511.]

(No. 7539—Decided March 16, 1965.)

*Messrs. Boehm & Rance* and *Mr. Naren Biswas,* for appellant.

*Mr. William B. Saxbe,* attorney general, for appellee.

Duffey, J. This is an appeal from an order of the Probate Court of Franklin County determining Ohio inheritance taxes. The basic issue is whether tax liability for certain joint and survivorship bank accounts should attach as a succession to the named survivor on the account, or attach as a succession to the legatee who receives the account as a result of its reversion to the estate. The case was submitted on its merits on an agreed stipulation of facts, plus exhibits 9 and 10. No objection has been raised to the exhibits.

Appellee has questioned the executrix's standing to appeal. The court is unanimous in holding that the executrix is a proper person to bring this appeal.

The decedent, William G. Hershey, died December 12, 1961.

Surviving him were his wife (the executrix-appellant) and three adult children. The decedent's will left all property to his wife for life, with a remainder over to his children.

At the time of decedent's death, there were several joint and survivorship bank accounts in the names of decedent and his daughter Ethel Mae Wilcox, and in the names of decedent and his daughter Ruth Faye Knight. The entire funds in these accounts were contributed solely by the decedent, and neither daughter had any interest other than that created by the accounts themselves. There is nothing in the stipulation to show that either daughter exercised any right to the accounts or expressed any intent to accept the accounts during the decedent's life. There is nothing in the stipulation to show that either daughter even knew of the existence of the accounts prior to decedent's death.

After the death, both daughters filed a petition in declaratory judgment and for instructions asking that they be found to have disclaimed and renounced any interest in the accounts. The defendants were the executrix and all of the banks holding the accounts. The Probate Court held that the renunciation was valid and effective, and that the accounts belonged to the decedent's estate "as fully as though no rights of survivorship had existed." The court also held that the renunciation was not for any improper or illegal purpose. The executrix was ordered to collect and administer the accounts or assets of the estate "as fully as if no joint and survivorship arrangements had been effectively provided." The Tax Commissioner was not a party to that proceeding.

In this present tax case, the Probate Court appears to have adopted its previous findings. However, the exact wording or form of the disclaimer and renunciation is not clearly shown in the record. One member of this court doubts the sufficiency of the disclaimer. However, appellee did not question it by brief or in argument, and it is apparent that both parties wish to have the issue of taxation determined on the basis of a valid disclaimer. Upon a review of the record, the majority of this court considers the record sufficient to support a finding of an effective renunciation. Accordingly, this opinion and the concurring opinion both take as a fact that the daughters did not at any time, by word or act, either during

decedent's life or after his death, accept the accounts, and that they did renounce and disclaim any interest in the accounts.

In the Probate Court's preliminary determination of Ohio inheritance taxes, the court found the accounts were taxable as a succession passing under decedent's will. Upon exceptions by the Tax Commissioner, the court reversed its position. It held that, regardless of renunciation, the accounts were taxable as a "deemed succession" to the daughters under Section 5731.02 (E), Revised Code. The court held that the tax "is imposed upon the accrual of the right," that the right "accrued upon the decedent's death," and that the subsequent renouncing of their interests "cannot alter the tax consequences."

One sidelight is the actual effect on tax liability. If the accounts are taxable as a succession passing through the estate, the federal estate tax may be reduced by about $10,000. On the other hand, the effect on Ohio inheritance taxes in this estate is negligible. While the persons taxed by Ohio would change, the total taxes collected will be approximately the same under either view. The significant factor is the federal marital deduction law. Depending on the status of a particular estate, appellant's view of the use of renunciation by a donee-beneficiary of a joint account might either increase or decrease the total Ohio taxes, although the difference would seldom be very significant. The effect on federal taxes can be substantial.

In the opinion of the majority, the Probate Court was in error, the order must be reversed, and the cause remanded for determination of taxes as a succession under the will.

The pertinent portions of Section 5731.02, Revised Code, provide:

"A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person * * * in the following cases:

"* * *

"(E) Whenever property is held by two or more persons jointly, so that upon the death of one of them the survivor has a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of *such* right by the death of one of them *shall be deemed a succession taxable* under this section, *in the same manner as if* the enhanced value of the whole property belonged absolutely to the deceased person, and

*he had bequeathed the same to the survivor by will * * *."* (Emphasis added.)

In my opinion, the interpretation of this statute requires a review of the still developing legal nature of joint and survivorship accounts. The account is a chose in action—a right to receive or recover a debt arising out of contract. Since the obligation to pay a third party arises from a contract with the bank, the tendency in many states, especially Ohio, has been to emphasize the aspects of a third party beneficiary contract rather than the property aspects of a gift of a chose. See *Rhorbacker, Exr.,* v. *Citizens Building Assn. Co.* (1941), 138 Ohio St. 273; *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121. Such accounts can have the effect of a testamentary disposition without the formal requirements of a testament. In actual practice, they are often very analogous to the "Totten" trust. See 25 Ohio State Law Journal 283.

The leading case upholding such accounts and rejecting the attack on their testamentary character is *Cleveland Trust Co.* v. *Scobie, Admr.* (1926), 114 Ohio St. 241. The court there found that the establishment of the account by the contract of the depositor and the bank created an "interest" in the noncontributing "joint owner." However, Judge Allen's opinion emphasizes not only the present intent of the donor to transfer an interest, but also that the depositor notified the other party of the account and secured her signature. The court held that this participation by the noncontributing party was an evidencing of her "*assent* to the arrangement." 114 Ohio St., at 253. (Emphasis added.)

Since *Scobie* was based on the assent of the noncontributing party, it left uncertain the validity of such an account where the donee had not participated in the arrangement. That question was presented for the first time in *Rhorbacker, Exr.,* v. *Citizens Building Assn. Co.* (1941), 138 Ohio St. 273. The court upheld the validity of the account even though there was no evidence of participation. In doing so, the court followed other states which had accepted the social utility of such accounts and refused to apply a restrictive approach to their use. However, it is important to note that the requirement of assent was *not* eliminated. Rather, the court created a presumption of the fact of assent analogous to that found in general gift law. Both

in the syllabus and in the opinion, the court specifically stated that "full assent to the contract" by the nonparticipating party "may be presumed" since it is generally advantageous to him.

The basis of the donee's interest in such an account therefore clearly lies in (1) a present intent of the donor-depositor to transfer an interest and (2) the assent of the noncontributing donee. Assent may be by actual assent, or by sufficient participation (*Scobie*), or by a rebuttable presumption of fact (*Rhorbacker*).

In my opinion, the *mere* establishment of the account does not create any ownership interest or right in a nonparticipating party to the account. It creates only a *power* to withdraw by virtue of being the third party beneficiary under the depositor's contract with the bank. The creation of an *ownership* interest requires both the present intent to transfer and an assent. The confusion arises from a failure to distinguish the underlying legal doctrine from the evidentiary problem.

Where the only *evidence* produced is the account itself, a present intent can be inferred from the establishment, and an assent inferred from either participation or by the presumption of fact. However, either inference can be rebutted by additional evidence, and the party shown to hold only a bare power of withdrawal.

In the present case, a present intent can be inferred, but the only basis for assent, the presumption, has been rebutted by renunciation and refusal. Accordingly, I believe that there was no "accrual" of a "right" for probate purposes nor within the meaning of Section 5731.02, Revised Code.

Even assuming a nonparticipating party may be said to acquire some type of ownership interest regardless of his assent, there is another aspect of such accounts. In most earlier cases, it was either assumed or not in question that the interest to be transferred to and acquired by the noncontributing party was to be the complete ownership, *i. e.*, full possession, enjoyment and use of the funds. Such an assumption does not necessarily reflect the actual practice of people using these accounts. The intent of the depositor in creating a joint interest may be only for his own convenience, or to enable another to make withdrawals for him, or pay his bills, etc. If a completely artificial and false result was to be avoided in such cases, it was

necessary to recognize the distinction between the interest of the noncontributing party as created by the mere establishment of the account and, on the other hand, the interest or right in the beneficial enjoyment and use of the account funds.

The Supreme Court has repeatedly held that the relationship between the bank and the depositor, together with the statutes which control it (Section 1105.09, Revised Code), is irrelevant in determining the relationship which exists between the parties to the account. The statutes "are solely for the benefit and protection of banks" and are "not helpful in determining the rights in the deposits of the obligees as between themselves." See *Bauman* v. *Walter* (1953), 160 Ohio St. 273, at 275. See, also, *Fecteau* v. *Cleveland Trust Co.* (1960), 171 Ohio St. 121; *Union Properties, Inc.*, v. *Cleveland Trust Co.* (1949), 152 Ohio St. 430; and *Nichols* v. *Metropolitan Life Ins. Co.* (1941), 137 Ohio St. 542.

In *Fecteau,* the court stated, at page 125:

"The real intent of the parties is often a question of fact, and evidence may be admitted to show that intent, even where by signature card or in some other way a joint account has apparently been established. * * *"

The distinction between the bare interest created by the establishment of the account and the true beneficial ownership is well illustrated by *Fecteau.* The decedent had created a joint and survivorship account with one June A. Larkin. During his life, she withdrew funds, as she obviously had the *power* to do under the terms of the account. After his death, an action was brought to recover the funds or chose for the estate. The petition alleged that the form of the account had been for the convenience of the decedent only, and that she had no "authority" to withdraw for her own use. The court held this stated a cause of action. The *Fecteau case* is a good example of the distinction between the *power* to withdraw, which is created by the contract with the bank, and the *right* to the beneficial interest in the funds withdrawn, *i. e.,* the right to the present possession, enjoyment and use of the funds.

Both of these aspects of joint and survivorship accounts have an important effect on the probate administration of the account. If (1) there has been no acceptance or "assent" shown (*i. e.,* by sufficient participation at the time of establish-

ment, or by subsequent withdrawals or other evidence), and (2) the presumption of acceptance is rebutted by proof of rejection and nonacceptance, then the chose belongs to the estate and is an asset to be administered. Likewise, if there was no intent to transfer the beneficial interest, but rather an intent to retain it as in *Fecteau*, the chose also belongs to the estate and is an asset to be collected and administered.

In that regard I agree with the Probate Court that in this case the accounts are assets of the estate and must be so administered and are to pass under decedent's will. There is nothing of record to evidence an assent by the donees. As previously noted, there is nothing to suggest they even knew of the existence of the accounts until after decedent's death. They, then, formally and specifically rejected and refused to accept both the power of withdrawal created by the account and the beneficial interest in the funds. There can be no presumption of acceptance here. It might be added that it is fundamental in our legal system, and an attribute of a free man in a free society, that a private person cannot foist property (or a chose) and its legal consequences upon another without the other's consent.

For these reasons, it also follows that appellee is in error in suggesting that the rejection operated to change the daughters' position. They did not transfer any interest which they previously held nor did they complete a transfer. They simply refused to accept an attempted transfer just as any gift or bequest may be rejected.

The position of the Tax Commissioner is, therefore, a proposition that the mere establishment of the account by the decedent, plus his death, constitutes an "accrual of such right," *i. e.*, the "right to the immediate ownership or possession and enjoyment of the whole property." Section 5731.02 (E), Revised Code. This would be so despite the fact that here the intended beneficiaries-donees did not contribute, did not participate in establishment, did not otherwise assent by withdrawal or other action, and did effectively reject. This would also be so despite the fact that the accounts are now legally a probate asset, that they pass under the will, and that on the face of the Ohio tax statutes, the succession which occurs under the will is a taxable succession. (Counsel for appellee was asked in ar-

gument whether he believed there were two taxable successions, one to the daughters and one to the legatee under the will. He believed there would be two successions, but he did not believe the succession to the legatee was taxable. However, counsel did not suggest any method of reconciling his conclusion with the tax statutes.)

In my opinion, the underlying purpose of paragraph (E) of Section 5731.02, Revised Code, was to reach the acquisition of the *beneficial* ownership of joint and survivorship accounts—the actual possession, enjoyment and use. Its wording shows that it was a deliberate "plugging of a loophole" which had been created by the legalistic distinction between a "succession" and a "perfecting" of ownership. This loophole was created by the analogy to the common-law fiction of an estate by the entireties. In such an estate the surviving joint owner was considered not to acquire by inheritance or succession, but to be an owner whose title became complete by the dissolving of the decedent's interest. The tax statute, therefore, provides that the acquisition "shall be *deemed* a succession."

Under the appellee's view, there would be a taxable accrual of a "right" even in *Fecteau* where the survivor of the named parties never had, and could not obtain, the beneficial ownership of the accounts. In the present case, the legal and beneficial ownership was available, but in fact neither was obtained. Both have passed into the estate and, by succession, to the legatee.

My view is strengthened by the further statutory provision that the "right" referred to is deemed to be a succession "in the same manner *as if * * * * he had *bequeathed* the same to the survivor by will." (Emphasis added.) Where a bequest is rejected and the asset reverts, the attempted gift by bequest is *not* a taxable succession. The tax applies to the succession which results from the reversion.

Thus, in my opinion, no "right" whatsoever actually accrued to the daughters, but rather only a power. If the power of withdrawal be called a right, then the "accrual" referred to by the tax statute is not the bare right, but rather the right to the beneficial use, possession and enjoyment. Where, as in *Fecteau,* that beneficial right was never intended to be transferred, or where, as in this case, neither the establishment of the

account nor the beneficial ownership is accepted, there is no accrual of a taxable right to the surviving party. The tax here is to be imposed on the succession to the legatees under the will.

What has been said adequately disposes of *In re Estate of Chadwick* (1958), 167 Ohio St. 373. In that case, the surviving party accepted the gift of the chose by taking the funds in the account, and then made a voluntary gift to the decedent's estate in order to pay her husband's debts—and perhaps to preserve other assets.

Appellee places heavy reliance on *In re Estate of Evans* (1962), 173 Ohio St. 137. In that case, the appellant purchased government bonds with her own money and listed them in her name or her husband's name. Under federal regulations, this had the effect of a joint and survivor relationship. There was no bill of exceptions and, therefore, nothing to show either (1) an intent to transfer the right to the beneficial interest to her husband or (2) an acceptance in any manner or by any theory by him. Both points are clearly assumed by the majority opinion. Perhaps the majority implicitly found that both points could be presumed. However, either way, the assumptions of fact in *Evans* distinguish the situation there from that in both *Fecteau* and this case.

It should also be noted that in *Evans* the tax was imposed on the accrual to the *donor*. Whatever may be the merits of the decision in that case, the survivor in *Evans* obviously did end up holding the full beneficial ownership, possession and enjoyment of the bonds. In this case, the donee did not accept either the power to withdraw or the beneficial right, and it is the legatee who will succeed to the beneficial ownership.

Finally, *Evans* might suggest that the state may constitutionally levy a tax on a nonaccepting donee. Perhaps it even suggests that one who has no right to the beneficial interest can be taxed. However, if the incidence of such a tax were to place a *personal* liability upon a person who refuses to accept property offered to him, a constitutional question not discussed in *Evans* would arise. Regardless of constitutional questions, Section 5731.02 (E), Revised Code, does not so levy a tax.

The order of the Probate Court will be reversed. The proceedings will be remanded with instructions to recompute the tax based on the succession passing under the will to the lega-

tees, and not as a succession to the daughters under Section 5731.02 (E), Revised Code.

*Judgment reversed.*

DUFFY, J., concurs.
BRYANT, P. J., dissents.

DUFFY, J., concurring. I concur in the judgment of reversal for the reason the daughters did have the right to the immediate ownership or possession and enjoyment, and the statute, Section 5731.02, Revised Code, says the "" * * * accrual of such right * * * shall be deemed a succession *taxable* * * * in the same manner as if the * * * deceased person * * * had bequeathed the same to the survivor by will * * *." (Emphasis added.)

If this property had been bequeathed by will to the daughters and they renounced the bequest, Section 2113.60 of the Revised Code would govern the transfer and the tax would not be against the daughters. Their renunciation prevents a tax on the deemed succession, and the taxable succession would be the distribution through the estate of the decedent.

BRYANT, P. J., dissenting. In the opinion of the writer, the judgment of the Probate Court of Franklin County imposing the succession tax provided in Section 5731.02, Revised Code, upon the six joint and survivorship accounts should be affirmed upon the authority of *In re Estate of Evans* (1962), 173 Ohio St. 137. In *Evans*, the constitutionality of the tax was upheld, and while there was a strong dissent by a single judge, six members of the Supreme Court of Ohio concurred in the majority opinion. Most of the important facts having a bearing on this case are set forth in an agreed stipulation and attached exhibits.

William G. Hershey, the decedent, died on December 12, 1961, survived by Edna M. Hershey, his widow and executrix of his last will and testament, and three adult children, Ethel Mae Wilcox, Ruth Faye Knight and Roscoe R. Hershey. By his will Hershey gave his widow a life estate in all his property

"real and personal, and all money accounts," and he gave to his three children, share and share alike, "all the rest, residue and remainder" of his estate. In this case, the widow elected to take under the law rather than under the will.

According to the stipulation, Hershey set up joint and survivorship accounts representing substantial deposits of money in five building and loan associations located in Mt. Vernon, Loveland, Columbus, Wooster and Sunbury, Ohio. (Stipulation, paragraphs 4 through 8.) In each case, the joint and survivorship account was set up with two names appearing on the certificates of deposit and the account records. On all five such accounts, the name of William G. Hershey appeared. On three of the accounts the names of Ethel Mae Wilcox also appeared, while on the other two accounts the name of Ruth F. Knight appeared. It was stipulated that the two persons named on each account were joint owners with the right of survivorship. It was also stipulated that none of the funds was contributed either by Ethel Mae Wilcox or Ruth F. Knight, and, further, that neither Mrs. Wilcox nor Mrs. Knight "had any interest in the funds of the decedent in such accounts except by virtue of the survivorship feature in the joint and survivorship accounts with the parties as described." (Stipulation, paragraph 9.)

At the time of Hershey's death on December 12, 1961, the deposits with the five building and loan associations totalled $46,000, of which $18,000 was in accounts in which Ruth F. Knight was the survivor and $28,000 was in accounts in which Ethel Mae Wilcox was the survivor.

It appears that Mrs. Wilcox and Mrs. Knight, subsequent to the death of their father, filed what are described as renunciations and refusals to accept the proceeds of the joint and survivorship accounts in the five building and loan associations. The opinion of the majority holds that these so-called renunciations and refusals have the effect of rebutting the presumption that the two daughters assented to the gift to them of their parts of the five joint and survivorship accounts. With this, the writer disagrees. In the case of exhibit 4, which is a certificate of deposit for $8,000 made out to W. G. Hershey and Ruth F. Knight on July 6, 1959, it would seem clear that the succession to Mrs. Knight accrued as of December 12, 1961, yet it

was not until approximately eight months later that the so-called disclaimer took place, to wit, on August 15, 1962.

In the opinion of the writer, the so-called disclaimer was nothing of the kind but was in fact an assignment of the certificate by the then exclusive owner, Ruth F. Knight, to the estate of Mrs. Knight's father. By operation of law, Mrs. Knight was making in effect a partial assignment to herself. She appears certain to share in the estate on a basis which we estimate at approximately 23 per cent. (It would appear that the mother will receive 33 1/3 per cent, plus special allowances, and each of the three children will receive one-third of the remaining 66 2/3 per cent.)

There is no need at this time and place for me to attempt to make an exact determination of the tax results from the action taken by Mrs. Knight or by Mrs. Wilcox. It would be more accurate to describe the action taken by the two daughters as an apparent acceptance and acquiescence in the accrual of the full and exclusive rights as owners of the five joint and survivorship accounts under the agreement with the building and loan associations, and, thereafter, the exercise of the rights of an owner to assign the evidence of the deposits to a named assignee. ..

This succession and a delayed assignment have little if anything in common with a concept of a disclaimer or refusal to accept referred to in the majority opinion.

The endorsement on the back of exhibit 4 reads as follows:

"TRANSFER OF SHARE ACCOUNT AND MEMBERSHIP

"For value received the undersigned hereby * * * [word obliterated] assigns and transfers to Estate of W. G. Hershey, by disclaimer the share account represented by the within certificate and does hereby irrevocably constitute and appoint the officers of said association to * * * [word obliterated] said share account on the books of said association. This 15th day of August, 1962.

[Signed] Ruth F. Knight

"In the presence of [Signed] Roscoe R. Hershey.

"The undersigned is the transferee of the share account represented by the within certificate and has executed application for membership and signature card.

[Signed] Edna M. Hershey, Exrx.

Estate of W. G. Hershey, Deceased."

Thus, instead of rejecting and refusing to accept any right, title or interest to the $8,000, Mrs. Knight remained the undisputed owner, possessor and person in control of the $8,000 account for eight months and then made a limited and special assignment of the account to her father's estate from which she would benefit to a substantial degree.

I have been unable to ascertain the dates, language and detail of the other claimed renunciations and refusals. However, the above appears to be consistent with the general plan of action and effectively answers and renders meaningless the so-called renunciations and refusals.

After examination of the authorities relied upon by the majority opinion, it would appear that in most cases the issues had nothing to do with the succession tax under Section 5731.02, Revised Code. It also appears that, with but few exceptions, the rights of the surviving owner were upheld.

The opinion by the majority stresses the absence of direct evidence that the daughters even knew of the establishment of these very large and valuable accounts. I observe that there is no evidence that the matter was kept a secret from them either. I believe that the presumption of acceptance became operative when the accounts were set up, and there is no evidence whatever to question or dispute this. If this be true, the daughters, for a period of years, had the same rights as the father to use all or any part of all of these accounts, and, on the very instant of his death, the taxable succession took place. It was then that the tax became due and the events which followed were, in my opinion, totally insufficient to change this picture in any material respect.

The writer finds it difficult to find anything respecting the gift by Hershey of $18,000 to Mrs. Knight or the gift of $28,000 to Mrs. Wilcox which could be described as onerous or burdensome in any way sufficient to rebut the presumption of acceptance.

On the contrary, it would appear that Hershey was making excellent provision for the financial welfare of his family. The fact that his plan may have resulted in heavy federal inheritance taxes sheds no light whatever in solving questions as to the application of state succession tax laws.

For the reasons above set forth, the writer is of the opinion that the judgment of the Probate Court should be affirmed.