[Cite as *Graham v. Szuch*, 2014-Ohio-1727.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100228

## SONJA GRAHAM

PLAINTIFF-APPELLANT

vs.

## GENE SZUCH, ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2012 ADV 181974

**BEFORE:** E.T. Gallagher, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 24, 2014

**ATTORNEYS FOR APPELLANT**

John P. Malone, Jr.
Andrew R. Malone
Malone Law, L.L.C.
614 West Superior Avenue, Suite 1150
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE**

Eric Weiss
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114

**For KeyBank**

Melissa Zujkowski
Ulmer & Berne, L.L.P.
Skylight Office Tower
1660 West 2nd Street, Suite 1100
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

{¶1} Plaintiff-appellant, Sonja Graham ("Sonja"), appeals an order of the Cuyahoga County Probate Court granting summary judgment in favor of defendant-appellee, Gene Szuch ("Szuch"), individually and as the administrator of the Estate of Sandra L. Szuch. We find no merit to the appeal and affirm.

{¶2} This case involves an ownership dispute over shares of stock in four family owned, close corporations ("the Skrl Companies") founded by Stanley Skrlj ("Stanley") in the 1950s and 1960s. Skrlj and his wife, Olga Skrlj ("Olga"), had two daughters; Sonja and Sandra. In 1969, Sonja married Roland Graham, and in 1971, Sandra married Szuch. Sonja, Sandra, and their husbands were employed by the Skrl Companies.

{¶3} In 1976, Stanley executed a revocable trust agreement ("the Trust"). The shares of stock in the Skrl Companies comprised the corpus of the trust, which was composed of two separate trusts, a marital Trust ("Trust A") and a non-marital residue trust ("Trust B"). Upon the death of the survivor of Stanley and Olga, the assets remaining in Trust A were to be combined with the assets in Trust B and distributed outright and equally to Sonja and Sandra.

{¶4} Olga survived Stanley, who died in 1988. As a result of Stanley's death, certain assets were delivered to the trustee of the Trust from Stanley's estate including (1) 100 shares of Skrl Tool & Die Inc.; (2) 100 shares of Skrl Die Casting Inc.; (3) 100 shares of Skrl Design Inc.; and (4) 100 shares of Skrl Realty Inc. Of these shares, Trust A was funded with seven shares in each of the Skrl Companies. Trust B was funded with the

remainder of the assets received from Stanley's estate, which comprised 93 shares in each of the Skrl Companies. The Trust was managed by KeyBank (formerly "Society National Bank") as trustee. As permitted by the Trust, the trustee distributed all of the assets in Trust A to Olga upon her request in 1999, and KeyBank continued to manage the assets in Trust B.

{¶5} Despite the terms of the Trust requiring equal distribution of the assets of Trust B to Sonja and Sandra upon Olga's death, KeyBank continued to manage the assets for several years after Olga's death in 2002. In October 2006, Sherry Bartolotta ( "Bartolotta"), vice president and trust officer at KeyBank, sent a letter to Sonja and Sandra advising them that Trust B required outright distribution of its assets to them in equal shares as a result of their mother's death. Neither Sonja nor Sandra took any action with respect to the mandatory distribution.

{¶6} In September 2009, Bartolotta forwarded the 93 stock certificates in each of the four Skrl Companies to Sandra at the Skrl Companies' (Companies') address. She sent a copy of the letter and enclosures to Sonja at her home address, though Sonja maintains she never received these letters. Nevertheless, at the time of Sandra's death in July 2011, the stock certificates were still titled in the name of "Society National Bank, Trustee, created under the Stanley Skrlj Trust Agreement dated 2/1/76."

{¶7} Sonja, as a beneficiary of the Trust, filed a complaint against Szuch seeking a declaratory judgment that she was the owner of the 46.5 shares of each of the Skrl Companies (Skrl Tool & Die, Skrl Design Inc., Skrl Realty, Inc., and Skrl Die Casting,

Inc.) to which the Estate of Sandra Szuch claimed ownership. Sonja alleged that Sandra's refusal during her lifetime to accept ownership of the shares tendered by KeyBank constituted a rejection of the shares. She further alleged that Sandra intentionally refused to accept the shares in order to interfere with Sonja's right to co-manage the Skrl Companies as a 50% shareholder and to conceal her use of corporate funds for extravagant personal expenditures.

{¶8} Szuch answered the complaint and filed a counterclaim seeking a declaration that the Estate of Sandra Szuch is entitled to her 50% portion of stocks in the Skrl Companies that vested during her lifetime, even though the stock certificates were not registered in her name. The pleadings were amended, and Szuch filed a motion for summary judgment supported in part by an affidavit from Bartolotta. Sonja moved to strike Bartolotta's affidavit on grounds that it contained non-factual opinion statements.

{¶9} The trial court granted the motion to strike, in part, and struck certain paragraphs from Bartolotta's affidavit that contained legal conclusions and opinions. The trial court also granted Szuch's motion for summary judgment and declared that Sandra Szuch's estate is entitled to one half of the 93 shares of stock (46.5 shares) in each the Skrl Companies. Sonja now appeals and raises five assignments of error.

## Standard of Review

{¶10} Szuch's first four assignments of error assert that the trial court erred in granting summary judgment in favor of Szuch for various reasons. We review an appeal from summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105,

671 N.E.2d 241 (1996). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact as to the essential element of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). Once the moving party demonstrates entitlement to summary judgment, the burden shifts to the nonmoving party to produce evidence related to any issue on which the party bears the burden of production at trial. Civ.R. 56(E). Summary judgment is appropriate when, after construing the evidence in a light most favorable to the party against whom the motion is made, reasonable minds can only reach a conclusion that is adverse to the nonmoving party. *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998).

### Acceptance of Shares

{¶11} In the first assignment of error, Sonja argues the trial court erred in failing to find sufficient evidence upon which a factfinder could determine that Sandra rejected the gift of her shares in the Skrl Companies. She contends Sandra's failure to register the stock in her own and Sonja's names is proof that Sandra renounced her rights and interests in the Skrl Companies.

{¶12} Sonja relies on *In re Estate of Hershey*, 1 Ohio App.2d 511, 205 N.E.2d 590 (10th Dist.1965) in support of her argument. In *Hershey*, the court held that two beneficiaries of joint and survivorship bank accounts renounced a presumed gift of the

bank accounts because there was "nothing in the record to evidence an assent by the donees." However, *Hershey* is distinguishable from the instant case because the donees in *Hershey* filed a complaint for declaratory judgment asking the court to find that they disclaimed and renounced any ownership interest in the accounts. *Id.* at 512. In other words, they actively sought renunciation.

{¶13} "The law presumes, *until there is proof to the contrary*, that every gift, whether in trust or not, is accepted by the person to whom it is expressed to be given." *Andrews v. Ohio State Teachers Retirement Sys. Bd.*, 62 Ohio St.2d 202, 205, 404 N.E.2d 747 (1980). (Emphasis added.) Further, the issuance of a stock certificate is not necessary to establish corporate ownership. *Estate of Thomas v. Thomas*, 6th Dist. Lucas No. L-11-1064, 2012-Ohio-3992, ¶ 40. *See also Algren v. Algren*, 183 Ohio App.3d 114, 119, 2009-Ohio-3009, 916 N.E.2d 491 (2d Dist.). A stock certificate is simply a representation of a share, not the share itself, which is intangible. *Algren* at 119. Although the existence and transfer of stock certificates may provide evidence of a completed gift of corporate stock, such evidence is not necessary to establish ownership. *Id.*

{¶14} Pursuant to the terms of the Trust, Sonja and Sandra's interest in the Trust property vested upon the death of their mother, Olga. Black's Law Dictionary defines "vest" as "[t]o give an immediate, fixed right of present or future enjoyment. * * * To clothe with possession." *Black's Law Dictionary* 1563 (6th Edition). Thus, when an interest vests, ownership is established. *Gilman v. Hamilton Cty. Bd. of Revision*, 127

Ohio St.3d 154, 2010-Ohio-4992, 937 N.E.2d 109, ¶ 16; *Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 158, 729 N.E.2d 711 (2000).

**{¶15}** Sonja and Sandra's interests in the Skrl Companies vested when their mother died even though stock certificates were not registered in their names. In contrast to the beneficiaries in *Hershey*, it is undisputed that Sandra never actively disclaimed ownership of her shares of stock. The undisputed evidence shows that Sandra managed the companies until the time of her death. Sandra's continued service to the companies is inconsistent with an intent to renounce ownership of them. Indeed, her work for the Skrl companies manifests the opposite intention of abandonment or rejection. Even if we assume that Sandra intended to delay registering the stocks in hers and Sonja's names in order to conceal malfeasance, concealment does not equate to renunciation. There simply is no evidence that Sandra took any affirmative steps to reject her shares of stock that could rebut the presumption of acceptance. There was no evidence upon which a trier of fact could conclude that she intended to renounce her interests in the Skrl Companies.

**{¶16}** Therefore, the first assignment of error is overruled.

### Statutory Disclaimer

**{¶17}** In the second assignment of error, Sonja contends the trial court erred in failing to consider R.C. 5815.36(G)(3), which governs disclaimers of succession to property. She asserts that had the probate court applied R.C. 5815.36(G)(3) to the facts

of this case, it would have concluded that Sandra's interests in the shares could not pass to her estate as a matter of law.

{¶18} R.C. 5815.36(G)(3) provides that where a donee renounces a gift from a non-testamentary instrument, the property passes as if the donee died before the effective date of the instrument. However, R.C. 5815.36(B)(1) prescribes the manner in which a donee may disclaim the succession to any property and requires a "written disclaimer instrument," that must be executed, delivered, filed, and recorded. It is undisputed that Sandra never executed a written disclaimer instrument disclaiming her interest in half of all the stock in the Skrl Companies.

{¶19} Nevertheless, R.C. 5815.36(N)(1) states that "the procedures for disclaimer established by this section are in addition to, and do not exclude or abridge, any other rights or procedures that exist or formerly existed under any other section of the Revised Code or at common law to * * * refuse to accept, renounce, waive or disclaim property." Former R.C. 1339.68(G), the predecessor statute of R.C. 5815.36(G)(3), also required an executed written disclaimer. Thus, statutorily prescribed disclaimers must be in writing.

{¶20} At common law, however, a disclaimer or renunciation need not be in writing to be effective. *Brown v. Routzhan,* 63 F.2d 914 (6th Cir.1933). Sonja relies on *Brown* for the proposition that Sandra's failure to distribute the shares and register stock certificates operates as a common law disclaimer. However, the *Brown* court explained that while the acceptance or renunciation need not be in writing, an acceptance or renunciation still required a "deliberate and unequivocal act indicating the intention." *Id.*

at 916. This rule is consistent with the common law rule that every gift is presumed accepted absent proof to the contrary. *Andrews,* 62 Ohio St.2d at 205, 404 N.E.2d 747.

{¶21} As previously explained, there is no evidence in the record that Sandra ever made a "deliberate and unequivocal act" manifesting an intent to renounce her shares. Her service to the Skrl Companies demonstrates an ongoing interest in them rather than renunciation. Therefore, there is no evidence in the record to support Sonja's claim that Sandra renounced her gift of shares under either statutory or common law.

{¶22} The second assignment of error is overruled.

**Conditions for Delivery**

{¶23} In the third assignment of error, Sonja argues that because Sandra never registered the shares of stock in hers and Sonja's name, conditions on the transfer of stock were never fulfilled, and Sandra never became an owner of her gift of shares. Sonja contends the gift of the shares was never completed by the donor because KeyBank had not yet relinquished all dominion and control over the stock certificates and had placed express conditions on the transfer that were not fulfilled. According to Sonja, KeyBank refused to tender the stock certificates until its fees were paid, and it received a written assurance from Sandra that the stocks were accepted, transferred, and registered.

{¶24} However, as previously held above, Sandra's interest in her shares of stock vested automatically upon the death of both her parents pursuant to the terms of the Trust, regardless of notice, delivery, or registration of the stock certificates. The issuance of a stock certificate is not necessary to establish corporate ownership. *Thomas*,

2012-Ohio-3992, at ¶ 40; *Algren*, 183 Ohio App.3d at 119, 916 N.E.2d 491.   Therefore, the fact that Sandra never registered new stock certificates to reflect title in her own and Sonja's names or notified Sonja of the transfer of title to the shares is irrelevant.

{¶25} Further, the terms of the Trust support the court's conclusion that Sandra's estate was entitled to ownership of Sandra's shares.   "A court's purpose in interpreting a trust is to effectuate, within the legal parameters established by a court or by statute, the settlor's intent."   *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706 (1993), paragraph one of the syllabus.   When the language in a trust is unambiguous, the grantor's intent can be determined from the express terms of the trust itself.   *Id*. at 314.

{¶26} In this case, the Trust does not contain a "lapse" provision that would cause Sandra's interest in the shares to lapse if she were to die prior to the distribution.   The Trust provides that following the death of the survivor of Stanley or Olga, the assets must be distributed to any then living lineal descendants, per stirpes.   The only condition on inheriting the Trust assets was to be a living lineal descendant at the time the survivor of Stanley and Olga died.

{¶27} Sandra lived almost ten years after her mother's death and over 20 years after her father's death.   In the absence of a lapse provision in the Trust that would have caused Sandra's shares to lapse because she died prior to distribution of her shares, her interests in the shares vested automatically upon the death of her mother.   Neither Ohio law nor the terms of the Trust created any conditions precedent to succession of the

shares such as notice, delivery, and acceptance. Furthermore, KeyBank was merely a trustee without authority to change the terms of the trust.

{¶28} Therefore, the third assignment of error is overruled.

## Fiduciary Duty

{¶29} In the fourth assignment of error, Sonja argues that Sandra was a trustee for her in accepting delivery of the shares of stock and breached duties of good faith and loyalty owed to Sonja by failing to notify Sonja of her gift of shares after Olga's death. Sonja also argues the doctrine of unclean hands bars Szuch from receiving Sandra's shares.

{¶30} However, Sonja failed to allege claims for breach of fiduciary duty against Szuch in her amended complaint. According to Szuch, Sonja asserted claims for breach of fiduciary duty in a counterclaim that is currently pending in the Lake County probate court. Her breach of fiduciary duty claims may have merit but they were not properly before the Cuyahoga County probate court and cannot be asserted for the first time in this appeal.

{¶31} Sonja asserted the doctrine of unclean hands as an affirmative defense in her answer to the amended counterclaim and raised the issue of unclean hands in her brief in opposition to Szuch's motion for summary judgment on his counterclaim. She argued that both Sandra and Szuch intentionally deprived her of her right to 50% ownership in the Skrl Companies in order to convert corporate funds for their own personal use. Thus,

despite Szuch's argument otherwise, Sonja preserved the equitable defense of unclean hands for appeal.

**{¶32}** The unclean hands doctrine is a defense against claims in equity. *Rivers v. Otis Elevator*, 8th Dist. Cuyahoga No. 99365, 2013-Ohio-3917, ¶ 35. It requires a showing that the party seeking relief engaged in reprehensible conduct with respect to the subject matter of the action. *State ex rel. Coughlin v. Summit Cty. Bd. of Elections*, 136 Ohio St.3d 371, 2013-Ohio-3867, 995 N.E.2d 1194, ¶ 16. Courts should not impose the unclean hands doctrine where a party has legal remedies available to address the harm caused by an opposing party's misconduct. *Safranek v. Safranek*, 8th Dist. Cuyahoga No. 80413, 2002-Ohio-5066, ¶ 20. The application of the doctrine is at the discretion of the trial court. *Nowinski v. Nowinski*, 5th Dist. Licking No. 10 CA 115, 2011-Ohio-3561, ¶ 24.

**{¶33}** In this case, Sonja's unclean hands defense involves the same conduct that gave rise to her breach of fiduciary claims, which she is currently pursuing in the Lake County probate court. The breach of fiduciary duty claims provide a legal remedy to compensate Sonja for any financial loss caused by Sandra and Szuch's alleged misconduct. Therefore, the trial court did not abuse its discretion when it failed to apply the unclean hands doctrine to bar Szuch's counterclaim for declaratory judgment in this case.

**{¶34}** The fourth assignment of error is overruled.

## Bartolotta's Affidavit

{¶35} In the fifth assignment of error, Sonja argues that although the court struck some paragraphs of Bartolotta's affidavit, the court erroneously admitted paragraphs 16, 21, 22, 23, 24, 26, 27, and 28. She contends these paragraphs contain expert testimony for which Bartolotta was not qualified to proffer conclusions of law.

{¶36} A trial court or reviewing court may consider an affidavit made part of a motion for summary judgment even though it contains opinions as long as it meets the requirements set forth in Civ.R. 56(E) and Evid.R. 701. *Tomlinson v. Cincinnati*, 4 Ohio St.3d 66, 446 N.E.2d 454 (1983), paragraph one of the syllabus. Under Ohio Evid.R. 701,

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

Similarly, Civ.R. 56(E) states, in relevant part, that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify as to the matters stated in the affidavit." Thus, an affidavit must set forth facts, not legal conclusions, and the facts must be based on the affiant's personal knowledge. *Youssef v. Parr, Inc.*, 69 Ohio App.3d 679, 689, 591 N.E.2d 762 (8th Dist.1990). The trial court is vested with considerable discretion in determining whether the trier of fact will be aided by lay

opinion testimony. *State v. Hand*, 107 Ohio St.3d 378; 2006-Ohio-18, 840 N.E.2d 151, ¶ 125.

**{¶37}** Paragraphs 16, 21, 22, 23, 24, 26, 27, and 28 of Bartolotta's affidavit set forth facts based on her personal knowledge. In paragraph 5, Bartolotta states that she is familiar with the Trust because of her work as a trust officer at KeyBank. Although some of the disputed paragraphs in the affidavit contain opinions on ultimate issues in the case, opinion testimony or inference otherwise admissible "'is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact.'" *State v. Crotts*, 104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 29, quoting Evid.R. 704. Bartolotta's opinions are rationally based on her own perceptions and are helpful in determining critical issues of fact in the case. Therefore, Bartolotta's affidavit complies with the requirements of Civ.R. 56(E) and Evid.R. 701, and we find no abuse of discretion in the court's decision to admit these paragraphs into evidence.

**{¶38}** The fifth assignment of error is overruled.

**{¶39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas — Probate Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

EILEEN T. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR