[Cite as *Auer v. Paliath*, 2016-Ohio-5353.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| TORRI AUER, et al. | : | |
| | : | |
| *Plaintiffs-Appellants* | : | Appellate Case No. 27004 |
| | : | |
| v. | : | Trial Court Case No. 2008-CV-9673 |
| | : | |
| JAMIE PALIATH, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellees* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 12th day of August, 2016.

. . . . . . . . . . .

THOMAS W. KENDO, JR., Atty. Reg. No. 0058548, ANDREW M. ENGEL, Atty. Reg. No. 0047371, 7925 Paragon Road, Centerville, Ohio 45459
        Attorneys for Plaintiffs-Appellants

GARY J. LEPPLA, Atty. Reg. No. 0017172, PHILIP J. LEPPLA, Atty. Reg. No. 0089075, 2100 South Patterson Boulevard, P.O. Box 612, Dayton, Ohio 45409
        Attorneys for Defendants-Appellees

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Plaintiffs-Appellants, Torri Auer, Thomas Auer, and Rapid Realty Solutions, Inc. (collectively, "the Auers") appeal from a summary judgment granted to Defendant-Appellee, Hari Paliath. In support of their appeal, the Auers contend that the trial court erred when it refused to strike paragraph six of the affidavit that Hari Paliath filed in support of summary judgment. The Auers also contend that the trial court erred in granting summary judgment to Hari Paliath.

{¶ 2} We conclude that the trial court erred in failing to strike certain conclusory parts of Appellee's summary judgment affidavit, but did not err in failing to strike certain other parts, which were marginally non-conclusory. Nonetheless, the trial court erred in rendering summary judgment in favor of Appellee, because said movant failed to satisfy his initial burden to demonstrate that an absence of genuine issues of material fact existed concerning his liability for fraud. Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I. Facts and Course of Proceedings

{¶ 3} This is the third time this case has been before us. In October 2008, the Auers filed an action in the trial court against Jamie Paliath ("Jamie"), Hari Paliath ("Hari"), and Keller Williams dba Hometown Realty ("Hometown"), based on certain real estate transactions that took place in 2007. At the time of the transactions, Jamie worked for Hometown as a licensed real estate person. Pursuant to a contract between Hometown and Jamie, Hometown was to receive 30% of the commissions Jamie earned on real-estate transactions. *See Auer v. Paliath*, 2013-Ohio-391, 986 N.E.2d 1052, ¶ 4 (2d Dist.)

(*Auer I*), *reversed in part and affirmed in part*, 140 Ohio St.3d 276, 2014-Ohio-3632, 17 N.E.3d 561.

{¶ 4} Torri Auer and her ex-husband, Thomas Auer, lived in California. Torri met Jamie over a website called Bid4Assets, and came to Dayton, Ohio, in September 2007, to view a property she had found on the website. *Id.* at ¶ 5. Ultimately, Torri purchased several properties using some funds of her own as well as funds borrowed from Thomas. Torri and Jamie also created a company called Gem City Investment Group ("Gem City"), for the purpose of purchasing and rehabilitating a 12-unit property located on Emerson Avenue, in Dayton. Additional funds were spent by the Auers to rehabilitate two properties located on Richmond Avenue in Dayton. Sales of all the properties had closed by mid-December 2007, and the rehab projects, which were to be done by Miami Valley Home Improvements, LLC ("MVHI") were supposed to be finished in early 2008. *Id.* at ¶ 6-10. The objective was to rent the 27 total units that had been purchased, and to provide rental income to Torri.

{¶ 5} In December 2007, Jamie left Hometown and formed a company called The Investment Genie Realty Group, aka TIG Realty ("TIG"), which handled property management. TIG was supposed to handle Torri's rental properties. However, Torri never realized any income from the apartments, and by August 2008, only one of the 27 units was being rented. *Id.* at ¶ 9-12. In October 2008, Torri visited the properties and learned that they were all in disrepair and needed substantial work. *Id.* at ¶ 13.

{¶ 6} Shortly thereafter, the Auers filed suit against Jamie, Hari, and Hometown. The complaint asked for dissolution of Gem City pursuant to R.C. 1701.01; for damages in excess of $400,000 against Jamie and Hometown for breach of fiduciary duty; for an

accounting by Jamie, Hari, MVHI, and TIG for all money received during the pendency of their business relationships; for recovery under the Ohio Real Estate Recovery Fund; and for damages in excess of $400,000 against Jamie, Hari, MVHI, and TIG, for fraud.   In November 2008, an answer was jointly filed on behalf of Jamie and Hari.   However, in June 2009, counsel for Jamie and Hari was granted permission to withdraw as counsel, based on his representation that he had not been paid attorney fees, and that a potential conflict of interest existed, because Jamie and Hari had filed for divorce in February 2009.

{¶ 7} In July 2009, an attorney entered an appearance for Jamie, but no attorney entered an appearance for Hari.   Subsequently, the action was dismissed other than on the merits and without prejudice, based on the fact that Jamie had declared bankruptcy. The action was then reactivated and reinstated in November 2010, due to an agreed order of relief that had been filed with the bankruptcy court.

{¶ 8} Jamie then filed a motion for summary judgment in January 2012, and filed the following depositions with the court:  the depositions of Jamie, Torri Auer, and Thomas Auer.   After the court overruled the motion for summary judgment, the matter was tried before a jury in March 2012.   The jury found in favor of the Auers, and a judgment was filed assessing the following damages:  $135,000 in favor of Torri and against Hometown; $255,200 in favor of Torri and against Jamie; $103,000 in favor of Thomas against Jamie, with a remittitur to $24,250; and $427,000 in favor of the Auers against Hari, based on a directed verdict that the court had granted against Hari.

{¶ 9} Neither Jamie nor Hari appealed the judgment, but Hometown appealed. On appeal, we affirmed the judgment in all respects other than a $15,000 judgment concerning one property.   We concluded that Torri failed to prove the actual value of that

property at the time of purchase. *Auer I*, 2013-Ohio-391, 986 N.E.2d 1052, at ¶ 66-68. On further appeal, the Supreme Court of Ohio vacated the jury verdict against Hometown and remanded the case to the trial court for further proceedings on the issue of Hometown's liability. *Auer v. Paliath*, 140 Ohio St.3d 276, 2014-Ohio-3632, 17 N.E.3d 561, ¶ 28 (*Auer II*). The court's decision was based on error in the jury instructions that precluded the jury from making a decision on whether Jamie's actions were within the scope of her agency from Hometown. *Id.* The decision of the Supreme Court of Ohio was issued on August 28, 2014.

{¶ 10} In the meantime, Hari had filed a motion for relief from judgment in the trial court on June 30, 2012. His motion was supported by an affidavit in which he asserted that he was unaware that he was unrepresented after his attorney withdrew, and had received no notices from the court or his attorney after the attorney withdrew. He further stated that he had a valid defense because he had no personal responsibility for any activities associated with the claims in the case. The trial court granted the motion for relief from judgment following an evidentiary hearing held on June 11, 2013. Torri appealed from the decision, but we affirmed the decision on July 3, 2014, after finding no abuse of discretion by the trial court. *See Auer v. Paliath*, 2d Dist. Montgomery No. 25888, 2014-Ohio-2994, ¶ 12 (*Auer III*). Our decision was issued on July 3, 2014.

{¶ 11} In April 2015, the trial court set a trial date for September 2015, with all discovery to be concluded by August 15, 2015. On June 30, 2015, Hari filed a motion for summary judgment, in which he contended that he was not liable for any actions asserted in the complaint. He also contended that he was entitled to indemnification by Jamie, pursuant to their divorce decree. The Auers filed a response to the motion and

also asked the court to strike paragraphs six and seven of the affidavit, contending these paragraphs were conclusory. On December 18, 2015, the court issued a decision striking paragraph seven of the affidavit, but refusing to strike paragraph six. The court then granted summary judgment to Hari, concluding that he had presented unrefuted proof of lack of personal liability. In view of this holding, the court did not rule on the indemnification issue. The Auers now appeal from the summary judgment decision.

## II. Did the Court Err in Failing to Strike Paragraph Six of the Affidavit?

{¶ 12} The Auers' First Assignment of Error states that:

The Trial Court Erred in Failing to Strike All of Paragraph 6 of Paliath's Affidavit.

{¶ 13} Under this assignment of error, the Auers contend that the trial court erred in failing to strike paragraph six of Hari's affidavit, because that paragraph consisted of legal conclusions, not operative facts from which the trial court could properly find lack of genuine issues of material fact.

{¶ 14} Civ.R. 56(C) provides that:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the

evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 15} "We review summary judgment decisions de novo, which means that we apply the same standards as the trial court." (Citations omitted.) *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, ¶ 16. "We stand in the shoes of the trial court and conduct an independent review of the record." *Deutsche Bank Nat. Trust Co. v. Doucet*, 10th Dist. Franklin No. 07AP-453, 2008-Ohio-589, ¶ 8.

{¶ 16} Regarding affidavits, Civ.R. 56(E) states that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit."

{¶ 17} Hari's affidavit in support of summary judgment is very cursory, and, with respect to paragraph six, is virtually identical to paragraph six of the affidavit that was filed in support of his motion for relief from judgment. Paragraph six of the summary judgment affidavit states that:

> I never had personal responsibility for any activities associated with the subject claims herein, I did not have a "dba" for any LLC, I have a complete and total personal defense to any claims set forth against me individually and as a "dba" insofar as I never acted as an individual in any business matters, at most I was simply a "member" of an undesignated LLC,

and I simply did some estimates as an employee for Miami Valley Home Improvement, LLC having no role with "Investment Genie" or any "dba" or otherwise * * *.

Affidavit of Hari Paliath, filed on June 30, 2015, p. 1, ¶ 6.

{¶ 18} In its decision, the trial court concluded that the phrase "I have a complete and total personal defense to any claims set forth against me individually and as a 'dba' insofar as" was a legal conclusion.   Accordingly, the trial court struck that sentence in paragraph six.   The court refused to strike the remainder of the paragraph, based on its belief that the rest of the statements in paragraph six were factual statements relating to Hari's dealings with the subject LLCs and businesses.

{¶ 19} "The decision to admit or exclude evidence, including affidavit testimony, is subject to review under an abuse of discretion standard, and absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, we will not disturb the trial court's ruling."   (Citations omitted.)   *Carter v. U-Haul Internatl.*, 10th Dist. Franklin No. 09AP-310, 2009-Ohio-5358, ¶ 9.

{¶ 20} "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."   (Citation omitted.)   *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.   " 'Abuse of discretion' has been described as including a ruling that lacks a 'sound reasoning process.' "   *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 21} After the trial court's ruling, the remaining content of paragraph six is as

follows: (1) Hari never had personal responsibility for any activities associated with the claims in the case; (2) Hari never had a "dba" for any LLC; (3) Hari never acted as an individual in any business matters; (4) Hari was a member of an undesignated LLC; (5) Hari only did a few estimates as an employee of MVHI; and (6) Hari had no role with Investment Genie (TIG) or any dba.

{¶ 22} As to statement (1), it is primarily a legal conclusion. Hari contends, however, that the trial court was permitted to decide if it would be aided by "lay opinion" testimony, and that opinion testimony is appropriately admitted even if it embraces ultimate issues that the trier of fact is to decide. As support for his position, Hari cites *Graham v. Szuch*, 8th Dist. Cuyahoga No. 100228, 2014-Ohio-1727, ¶ 37. *Graham*, in turn, cites *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 125, for the proposition that lay opinion testimony may be admitted in the trial court's discretion. *Graham* at ¶ 36, citing *Hand* at ¶ 125.

{¶ 23} However, *Hand* involved a different situation than the case before us. Specifically, in *Hand*, a witness testified about the defendant's lack of reaction to the deaths of two wives that the defendant had arranged to have murdered. *Id*. at ¶ 118-123. The Supreme Court of Ohio concluded that the trial court did not abuse its discretion in admitting this evidence because the witness had personally observed the defendant's demeanor, and the defendant's lack of grief was relevant. *Id*. at ¶ 125. This is different from a defendant (Hari) giving his own opinion about whether his actions were relevant to a particular claim. As an example, the Supreme Court of Ohio held that an affidavit was conclusory and did not set forth facts to support summary judgment where the affiant stated that " 'At no time relevant to this case did either affiant * * * have any

authority or power or ability to take any action set forth in Paragraph 5 of the Complaint.' " *Fryberger v. Lake Cable Recreation Assn., Inc.*, 40 Ohio St.3d 349, 352, 533 N.E.2d 738 (1988). The court held that, instead, the affidavit recited legal conclusions. *Id.* at 353.

{¶ 24} Furthermore, the statement about Hari's lack of personal responsibility is so conclusory that it is essentially meaningless. It could be construed, at most, as a statement by a defendant that "I did nothing." Such a statement is akin to a general denial in an answer and lacks any factual foundation.

{¶ 25} In addition, the meaning of statement (2), i.e., that Hari did not have a "dba," is unclear. " 'The designation "d/b/a" means "doing business as" but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations.' " *Poss v. Morris*, 11th Dist. Ashtabula No. 94-A-0042, 1996 WL 200614, *3 (Mar. 29, 1996), quoting *Duval v. Midwest Auto City, Inc.*, 425 F.Supp. 1381, 1387 (D. Neb.1977). As a result, even if the trial court did not specifically err in admitting statement (2), the statement is unclear or basically irrelevant.

{¶ 26} The remaining statements, however, do involve "facts," although marginally. In these statements, Hari indicates that he never acted as an individual in any business matters and that he only conducted a few estimates as an MVHI employee. He also admits that he was a member of an LLC, but does not specify which LLC. Because these parts of paragraph six do involve facts, the trial court did not err in refusing to strike them, even though they are minimally informative. Whether these facts entitle Hari to summary

judgment is a different issue, and will be addressed in our discussion of the second assignment of error.

{¶ 27} Based on the preceding discussion, the First Assignment of Error is overruled in part and sustained in part.

### III.   Did the Trial Court Err in Granting Summary Judgment to Hari?

{¶ 28} The Auers' Second Assignment of Error states that:

The Trial Court Improperly Found that Paliath Was Entitled to Judgment as a Matter of Law.

{¶ 29} Under this assignment of error, the Auers argue that even if the trial court could consider Hari's affidavit, summary judgment was not appropriate because the claims against Hari were based on fraud and Hari's participation in a general scheme to defraud them through an LLC, MVHI.   The Auers further argue that members of an LLC can be held liable individually for the tortious acts of the LLC.

{¶ 30} In response, Hari contends that the Auers failed to submit any affidavits or factual materials in response to the motion.   He further contends that he satisfied his burden on summary judgment and that the Auers failed to carry their burden in responding to summary judgment.

{¶ 31} As was noted, our review of summary judgment decisions is de novo, and we independently review the record.   *GNFH, Inc.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16; *Doucet*, 10th Dist. Franklin No. 07AP-453, 2008-Ohio-589, at ¶ 8.

{¶ 32} In *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996), the Supreme

Court of Ohio stressed that "a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Id.* at 293. The court additionally stressed that "[the moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied." (Emphasis sic.) *Id.*

{¶ 33} The court also indicated in *Dresher* that "if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* However, "[b]ecause summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party." *Coles v. I-Force*, 2d Dist. Montgomery No. 26385, 2015-Ohio-1040, ¶ 10, citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358–59, 604 N.E.2d 138 (1992).

{¶ 34} The parties litigated the motion before the trial court on narrow grounds and we will limit our review to their arguments. Hari is correct that the Auers failed to point to specific facts indicating that genuine issues of fact exist. Instead they relied primarily

on the inadequacy of Hari's affidavit.

{¶ 35} The remaining content of the affidavit is very marginal, and does not satisfy Hari's "initial burden of informing the trial court of the basis of the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements(s) of the nonmoving party's claims." *Dresher*, 75 Ohio St.3d at 293, 662 N.E.2d 264. Since Hari failed to satisfy his initial burden under *Dresher*, the Auers had no duty to respond.

{¶ 36} We note that neither party directed the trial court to pertinent evidence: (1) the depositions of Thomas Auer and Jamie Paliath, which were filed with the trial court on January 17, 2012; (2) the deposition of Torri Auer, filed with the trial court on February 28, 2012; (3) Six volumes of transcripts from the trial that the court presided over for a week during March 2013; and (4) the transcript of the hearing the court held on June 11, 2013, regarding Hari's motion for relief from judgment.

{¶ 37} The complaint that was filed in this case alleged that Torri Auer was induced to purchase 2259 Emerson Avenue, based on representations from Jamie that Jamie had a company that was capable of making repairs. As a result, Torri purchased the property for $73,000 with funds obtained from Thomas. Torri also signed a promissory note to Thomas in the amount of $176,000, which included the purchase price and repairs that were to be made. Paragraph 14 and 15 of the complaint specifically implicate Hari in the alleged fraud, by indicating that Hari and Jamie represented that "their" company, MVHI could make the necessary repairs and improvements. The same type of allegations are made with regard to the purchase and repair by MVHI of properties located at 1111-1115 and 1119 Richmond Avenue. *See* Complaint, paragraphs 16-21. However, according

to the complaint, the properties were not rehabilitated and were not rented, causing damages to the Auers in excess of $400,000. The complaint contains further specific allegations of fraud, and includes Hari and MVHI in those allegations.

{¶ 38} The elements of fraud are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus, following *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, 462 N.E.2d 407 (1984).

{¶ 39} "A fundamental rule of corporate law is that, normally, shareholders, officers, and directors are not liable for the debts of the corporation." (Citation omitted.) *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.*, 67 Ohio St.3d 274, 287, 617 N.E.2d 1075 (1993). "An exception to this rule was developed in equity to protect creditors of a corporation from shareholders who use the corporate entity for criminal or fraudulent purposes." *Id.* "Under this exception, the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Id.*

{¶ 40} The test outlined in *Belvedere* is that "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1)

control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Id.* at 289.

{¶ 41} Subsequently, the Supreme Court of Ohio stated that "[i]n view of the reality that shareholders could seriously misuse the corporate form and evade personal liability under the second prong as presently worded, we find it necessary to modify the second prong of the *Belvedere* test to allow for piercing in the event that egregious wrongs are committed by shareholders." *Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, 895 N.E.2d 538, ¶ 28. As a result, the court held that "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner as to commit fraud, an illegal act, or a similarly unlawful act." *Id.* at ¶ 29.

{¶ 42} Under these standards, there are genuine issues of material fact regarding whether Hari is personally liable for fraud committed by MVHI. Furthermore, as argued by the Auers, Hari is also subject to liability individually for his alleged fraudulent actions, based on the claims asserted against him in the complaint. *See* Reply Brief of Appellants, p. 6, citing *Rismiller v. Wagner*, 2d Dist. Darke No. 1053, 1982 WL 3850 (Nov. 10, 1982).

{¶ 43} Hari was cited in the caption of the complaint as a "dba," but we have already noted that a person operating as a dba may be held individually liable. *Poss*, 11th Dist. Ashtabula No. 94-A-0042, 1996 WL 200614, at *3. Moreover, we noted in

*Rismiller* that "the names appearing in the caption of a case do not determine who the parties are to the suit; rather, whether or not a defendant is properly in the case hinges upon the allegations in the body of the complaint, and not upon his inclusion in the caption." (Citations omitted.) *Rismiller* at *2. *Accord Newark Orthopedics, Inc. v. Brock*, 10th Dist. Franklin No. 95APE03-246, 1995 WL 584353, *3 (Oct. 5, 1995), and *Briggs v. Wilcox*, 2013-Ohio-1541, 991 N.E.2d 262, ¶ 37 (8th Dist.) (noting that a "fair reading of the complaint" indicated that the plaintiff had sued the defendant individually). In the case before us, a fair reading of the complaint indicates that Hari was being sued individually.[1]

**{¶ 44}** In responding to the Auers' arguments, Hari also contends that even if the trial court erred in failing to strike paragraph six of his affidavit, he was still entitled to summary judgment based on the indemnification agreement in his divorce decree. Because the trial court did not address this matter, we will not consider it. However, we did observe in *Childrens Med. Ctr. v. Campbell*, 2d Dist. Montgomery No. 11709, 1990 WL 19327 (Mar. 2, 1990), that if a wife believed her former husband was responsible for all or part of the medical bills for their daughter, "her remedy was to file a cross-claim against her former husband for indemnification." *Id.* at *3. We see no evidence of a cross-claim in the record. *See* Answer of Defendants, Jamie Paliath, dba The Investment Genie Realty Group and Hari Paliath, dba Miami Valley Home Improvement, LLC ("Collectively, Paliath") to Plaintiff's Complaint, filed on November 26, 2008, and

---

[1] Hari also answered the complaint as "Hari Paliath, dba Miami Valley Home Improvement, LLC." *See* Answer of Defendants, Jamie Paliath, dba The Investment Genie Realty Group and Hari Paliath, dba Miami Valley Home Improvement, LLC ("Collectively, Paliath") to Plaintiff's Complaint, filed on November 26, 2008, p. 1.

Amended Answer of Hari Paliath, filed on May 6, 2015.

{¶ 45} As a further matter, the indemnification agreement in the divorce decree was filed in October 2009, well after the fraud action had been initiated against Jamie and Hari Paliath.[2]  The divorce decree attached to Hari's affidavit in support of his summary judgment motion also indicates that Hari gave up all interest in the marital residence, any interest in all the companies, including MVHI, TIG, A-1 Property, and Miami Valley Custom Homes, and any claim to the assets of these companies.   Hari appears to have received no property under the divorce decree.

{¶ 46} Badges of fraud attending fraudulent transfers and leading to an inference of fraud include "inadequate consideration; transfer of the debtor's entire estate; the debtor's insolvency as a result of the transfer; the relationship of the parties to the transfer; the reservation of an interest in the transferred property; and a threat or pendency of litigation."  (Citations omitted).  *Cardiovascular & Thoracic Surgery of Canton, Inc. v. DiMazzio*, 37 Ohio App.3d 162, 166, 524 N.E.2d 915 (5th Dist.1987).   *See also Individual Business Servs. v. Carmack*, 2d Dist. Montgomery No. 25286, 2013-Ohio-4819, ¶ 24-29 (discussing fraudulent transfers and 11 statutory badges of fraud in a case involving transfers while litigation was pending); and R.C. 1336.04 (relating to transfers made with intent to defraud or hinder creditors).

{¶ 47} Again, the indemnification issue was not considered by the trial court, and

_____

[2] A memorandum filed by Hari and Jamie Paliath's former counsel in support of his motion to withdraw as counsel also indicates that the Paliaths' divorce action was filed on February 26, 2009.   *See* Reply in Support of Motion to Withdraw as Counsel of Record, p. 2, filed on June 11, 2009.   Whether or not this was true, the filing, again, would have been after the fraud action was filed.   And, certainly, the parties were aware of the pending fraud action when they filed their divorce decree.

issues pertaining to enforceability of the indemnification clause are for the trial court to decide in the first instance.

{¶ 48} Based on the preceding discussion, the Second Assignment of Error is sustained.


IV. Conclusion

{¶ 49} The Auers' First Assignment of Error having been sustained in part and overruled in part, and the Auers' Second Assignment of Error having been sustained, the judgment of the trial court is reversed, and this cause will be remanded for further proceedings.


. . . . . . . . . . . .


FAIN, J. and FROELICH, J., concur.


Copies mailed to:

Thomas W. Kendo, Jr.
Andrew M. Engel
Gary J. Leppla
Philip J. Leppla
Thomas Pyper
Rapid Realty Solutions
Michael McNamee
Hon. Barbara P. Gorman